```
           UNITED STATES DISTRICT COURT
              DISTRICT OF MINNESOTA
              Civil No. 11-360(DSD/AJB)
```

Maxwell Kebasso and
Anne Kebasso,

       Plaintiffs,

v.                                                          **ORDER**

BAC Home Loans Servicing, LP,
and Arch Bay Holdings, LLC -
Series 2010B,

       Defendants.


    Colleen M. Daly, Legal Aid Society of Minneapolis, 403 First Avenue North, Suite 300, Minneapolis, MN 55401, counsel for plaintiffs.

    Aaron G. Thomas, Esq, Mark G. Schroeder, Esq. and Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant BAC Home Loans Servicing, LP.

    Jared M. Goerlitz, Esq., Steven H. Bruns, Esq. and Peterson, Fram & Bergman, PA, 55 East Fifth Street, Suite 800, St. Paul, MN 55101, counsel for defendant Arch Bay Holdings.


    This matter is before the court upon the motions to dismiss by defendants BAC Home Loans Servicing, LP (BAC)[1] and Arch Bay

---

[1] BAC is a limited partnership, whose partners are citizens of North Carolina.  See Notice of Removal ¶ 9.

Holdings, LLC – Series 2010B (Arch Bay).[2] Based on a review of the file, record and proceedings herein, the court grants the motions.

## BACKGROUND

This mortgage dispute arises out of the foreclosure of a mortgage on a home in Plymouth, Minnesota. Plaintiffs Maxwell and Ann Kebasso[3] (the Kebassos) purchased the home on November 9, 2006 with a loan from nonparty WMC Mortgage Corp. (WMC). Compl. ¶¶ 6, 8-9, 15. The Kebassos gave WMC a mortgage on the home to secure the loan. Id. ¶¶ 9, 15. The mortgage and the note identify WMC as the lender and nonparty Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." Id. ¶¶ 9-10, 16, Ex. A. The mortgage further states:

---

[2] Arch Bay fails to plead its citizenship. Arch Bay claims to be a citizen of Delaware and California, because it is "a limited liability corporation organized under the laws of Delaware, with its principal place of business in Irvine, California" and because it is "wholly owned by Arch Bay Capital, LLC, a limited liability corporation organized under the laws of Delaware, with its principal place of business in California." Notice of Removal ¶ 10. "[A]n LLC's citizenship is that of its members for diversity jurisdiction purposes." GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004). Therefore, the citizenship of Arch Bay is based on the citizenship of Arch Bay Capital, LLC, which is based on the citizenship of its members, not where Arch Bay Capital, LLC is organized and has its principal place of business. The court, however, exercises supplemental jurisdiction over the Kebassos' state law claims under 28 U.S.C. § 1367(a).

[3] The Kebassos are citizens of Minnesota. See Compl. ¶ 1.

2

> MERS has only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the Security Instrument.

Id. Ex. A, at 3. BAC serviced the loan.[4] Id. ¶ 18. In 2008, the Kebassos failed to make mortgage payments. Id. ¶ 19.

On March 19, 2010, Steven Bruns, an attorney at the law firm of Peterson, Fram & Bergman, executed an "Assignment of Mortgage" indicating that MERS, the Assignor, "as nominee for WMC ... hereby sells, assigns and transfers to BAC ... Assignee, the Assignor's interest in the Mortgage dated 11-09-2006 executed by [the Kebassos], as Mortgagor, to [MERS] ... as Mortgagee ... together with all right and interest in the note and obligation therein specified and the debt thereby secured." Id. ¶¶ 23, 28; id. Ex. B. Bruns signed the assignment as the Vice President of MERS. Id. ¶¶ 27-28; id. Ex. B. On May 14, 2010, the Hennepin County Recorder's Office recorded the assignment. Id. ¶ 23. The Kebassos allege that Peterson, Fram & Bergman and Bruns are not MERS members; that Bruns is not Vice President of MERS; that WMC ceased to exist in 2008; and that WMC did not own the mortgage loan on

---

[4] Litton Loan Servicing was the initial servicer of the loan. Compl. ¶ 17.

3

March 19, 2010.  Id. ¶¶ 24-31.  The Kebassos further allege that there are no documents indicating that MERS had the authority to assign the mortgage or the note or that Bruns or Peterson, Fram & Bergman had the authority to act on behalf of MERS.  Id. ¶¶ 33-34.

On May 14, 2010, BAC filed a "Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage by Corporation," authorizing Peterson, Fram & Bergman to foreclose the mortgage. Id. ¶¶ 35-36, Ex. C.  On May 26, 2010, Peterson, Fram & Bergman, as attorneys for BAC, served the Kebassos with "Notice of Mortgage Foreclosure Sale" (notice).  Id. ¶¶ 37-38, Ex. D.  The notice identifies MERS as the mortgagee "as nominee for WMC" and Bank of America, N.A. as the servicer.  Id. Ex. D.  The notice indicates that the mortgage was assigned to BAC on March 19, 2010 and that the sheriff's foreclosure sale would be held on July 23, 2010.  Id. ¶¶ 39-40, Ex. D.

In June or July 2010, Arch Bay sent the Kebassos a letter indicating that, effective June 18, 2010, "ownership of [their] mortgage loan has been or will be transferred from HSBC Bank USA, National Association" (HSBC)[5] to Arch Bay.  Id. ¶ 42.  The letter also informed the Kebassos that, on July 16, 2010, nonparty Quantum

---

[5] The record does not indicate when HSBC acquired ownership of the loan from WMC.

4

Servicing Corporation (Quantum Servicing) would be the servicer of the loan.[6]  Id. ¶ 43.

After receiving notice of the foreclosure sale, the Kebassos contacted BAC about the status of a pending loan modification application.  Id. ¶ 46.  BAC informed the Kebassos that the loan had been transferred to another entity and that BAC was no longer the loan servicer.  Id. ¶¶ 47-48.  The Kebassos then contacted the office of the foreclosing attorney and were informed that BAC still owned the loan and that the sheriff's sale would move forward.  Id. ¶¶ 49-50.  Prior to the sheriff's sale, the Kebassos contacted Quantum Servicing, which told them that Quantum Servicing did not have any information about the loan because the transfer was too new.  Id. ¶ 51.  The Kebassos could not reach an Arch Bay representative.  Id. ¶ 52.

The sheriff's sale occurred on July 23, 2010, and BAC was the highest bidder.  Id. ¶ 53.  On January 13, 2011, the Kebassos sued BAC and Arch Bay in state court, seeking a declaration that the assignment from MERS to BAC is defective and therefore void, that the foreclosure by advertisement is void under Minnesota law, that BAC has no standing or status as a creditor or mortgagee, and

---

[6] In July or August, 2010, Quantum Servicing sent the Kebassos a letter indicating that it acquired servicing of their loan from BAC on July 15, 2010.  Compl. ¶ 45.

5

claiming that BAC violated the Truth in Lending Act (TILA). BAC timely removed. BAC and Arch Bay each moved to dismiss on March 11, 2011. The court now considers the motions.[7]

**DISCUSSION**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.

---

[7] The Kebassos did not address defendants' arguments in support of the motions to dismiss the TILA claim. Dismissal is warranted on this basis alone. See, e.g., Siepel v. Bank of Am., N.A., 239 F.R.D. 558, 566 (E.D. Mo. 2006). Moreover, this claim fails on the merits. The Kebassos allege that BAC violated 15 U.S.C. § 1641(g) by failing to notify them that BAC acquired the mortgage from MERS on May 14, 2010. See Compl. ¶¶ 81-83. Section 1641(g), however, imposes obligations on "the creditor that is the new owner or assignee of the debt," not on the mortgagees or loan servicer. See 15 U.S.C. § 1641(g) (requiring "[n]otice of new creditor"); id. § 1602(f) (creditor is person "who regularly extends consumer credit that is subject to a finance charge" or payable in more than four installments and "to whom the obligation is initially payable"); id. § 1641(f)(1) (servicer of obligation not treated as assignee "unless the servicer is or was the owner of the obligation"); Harris v. Option One Mortg. Corp., 261 F.R.D. 98, 105 (D.S.C. 2009) (loan servicer not creditor under TILA); Roach v. Option One Mortg. Corp., 598 F. Supp. 2d 741, 749-50 (E.D.Va 2009) (mortgagee not creditor under TILA). Therefore, dismissal is warranted.

Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action are not sufficient to state a claim." Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court may consider materials "that are part of the public record," Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and matters "necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003).

## I. Assignment from MERS to BAC

Under Minnesota law, to entitle any party to foreclose by advertisement, it is requisite:

> (1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;
>
> (2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage ...
>
> (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded ....

Minn. Stat. § 580.02.  The Kebassos argue that the assignment from MERS to BAC, recorded in the Hennepin County Recorder's Office on May 14, 2010, was improperly executed and is therefore invalid and void for three reasons.

### A.   First Defect

The Kebassos first argue that the assignment is defective because MERS, the assignor, executed the assignment "as nominee of WMC" not as nominee of WMC's successors and assigns or as nominee of HSBC, the owner of the loan at that time.  Therefore, the Kebassos argue, MERS had no authority to assign its interest in the mortgage to BAC.[8]  See Compl. ¶¶ 56-61.  The court disagrees.

"[A] condition precedent to the right to foreclose by advertisement [is] that the title of an assignee of a mortgage [here, BAC,] appear of record ... in such manner that evidence extraneous to the record will not be needed to put the title of the assignee of the mortgage beyond reasonable question."  Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 497-98 (Minn. 2009) (citation and internal quotation marks omitted).  The November 9, 2006, mortgage expressly identifies MERS as "mortgagee under this security instrument" and nominee for "Lender *and* Lender's successors and assigns."  Compl. Ex. A (emphasis added). The March 19, 2010, assignment, expressly assigns MERS' "interest

---

[8] The Kebassos concede that, had MERS executed the assignment as nominee for Lender's successors and assigns or nominee for HSBC, this defect would be cured.  See Pl.'s Mem. Opp'n 11.

8

in the Mortgage dated 11-09-2006" to BAC. As a result, BAC, the assignee, acquired MERS' interest as mortgagee for WMC and its successors and assigns. Therefore, there is no reasonable question about BAC's title to the mortgage.

The Kebassos offer no support for their implicit argument that the mortgage is evidence extraneous to the record for the purpose of foreclosure by advertisement. To the contrary, Minnesota courts regularly look to the mortgage for evidence of title in foreclosure-by-advertisement disputes. See, e.g., Soufal v. Griffith, 198 N.W. 807, 808 (Minn. 1924) (foreclosure by advertisement void where "provisions of the decree [passing title] were so scant and lacking in definition as, standing alone, to leave [assignor's] right to the mortgage in doubt, and require extraneous proof, proof additonal [sic] to the record, to put that title, and consequently the title of ... her assignee, beyond question"); Benson v. Markoe, 42 N.W. 787, 787 (Minn. 1889) ("The statute authorizing this method of foreclosure evidently designs that there shall be of record a legal mortgage, and that the record shall be so complete as to satisfactorily show the right of the mortgagee or his assigns, to invoke its aid."). The mortgage agreement is part of the record and expressly defines MERS rights to the mortgage. Therefore, this argument fails.

**B.   Second Defect**

The Kebassos next argue that the assignment is defective because MERS had no independent authority to assign the mortgage or the note and the assignment was not authorized by the lender. See Compl. ¶¶ 58-61. The court disagrees. The mortgage expressly authorizes MERS "to exercise any or all of [Lender's] interests" and "to take any action required of Lender." Compl. Ex. A. The mortgage does not qualify MERS' authority or otherwise require that MERS receive express authorization from the lender before acting. Moreover, "as a result of questions raised about the MERS System [authority to act on behalf of its members], the Minnesota Legislature passed an amendment ... frequently called 'the MERS statute.'" Jackson, 770 N.W.2d at 491. The statute provides that:

> An assignment ... is sufficient to assign ... a mortgage if:
>
> (1) a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns;
>
> (2) a subsequent assignment ... is executed by the mortgagee *or* the third party, its successors or assigns; and
>
> (3) the assignment ... is in recordable form.

Minn. Stat. § 507.413 (emphasis added). The plain language of the statute does not require authorization from the lender before the mortgagee can assign the mortgage. The Kebassos executed a mortgage to MERS as nominee of the lender and the lender's

10

successors and assigns. See Compl. Ex. A. MERS, through Bruns, executed the assignment.[9] Id. Ex. B. The assignment was recorded by the Hennepin County Recorder's Office on May 14, 2010, and, as a result, was in recordable form. Id. Therefore, the Kebassos's argument that MERS had no authority to assign the mortgage fails.[10]

### C. Third Defect

The Kebassos next argue that, even if MERS had the authority to assign the mortgage, the assignment is defective because Bruns purported to assign the mortgage on behalf of MERS, but Bruns had "no connection whatsoever with MERS, a MERS member or with MERS' principal, the owner of the mortgage loan." Compl. ¶ 62. BAC argues that Bruns is a certified MERS officer with authority to sign on behalf of MERS. In support, BAC submits a 2009 "Agreement for Signing Authority" signed by representatives of MERSCORP, Inc., MERS, BAC (Member) and Peterson, Fram & Bergman (Vendor). See Bruns Aff., Ex. A. This agreement "define[s] the rights and obligations of the parties when Vendor performs certain duties, as

---

[9] The Kebassos argue that Bruns had no authority to execute the assignment on behalf of MERS. The court addresses this argument below.

[10] The Kebassos also argue that the assignment is void because BAC, not the owner of the loan, authorized MERS to assign the mortgage to BAC. See Pl.'s Mem. 14. The court has already determined, however, that MERS, as a mortgagee of record, has the authority to assign its interest without express permission from the owner of the debt. Therefore, the fact that Bruns is not employed by the MERS member that owns the indebtedness is immaterial.

11

described in the attached corporate resolution ... relating to mortgage loans that are registered on the MERS System ... and serviced by Member." Id. The attached MERS corporate resolution indicates that Bruns[11] and other individuals, as employees of Peterson, Fram & Bergman, are "hereby appointed as assistant secretaries and vice presidents of [MERS], and as such, are authorized to .... [a]ssign the lien of any mortgage loan registered on the MERS System that is shown to be registered to **BAC Home Loan Servicing, LP** or its designee." Id. Ex. B.

The Kebassos argue that the court must accept as true their allegation that Bruns was not authorized to assign the mortgage and should not consider these exhibits because they exceed the scope of the complaint. The court disagrees. First, the court is not required to accept the "mere conclusory statements" that Bruns had no connection with MERS. Iqbal, 129 S. Ct. at 1940. Moreover, the complaint alleges that "[t]here exists no document of record showing that either Steven Bruns or Peterson, Fram & Bergman had any authority to act on behalf of either MERS or the owner of the mortgage loan." Id. ¶ 34. A document directly contradicting this assertion is "necessarily embraced by the pleadings." Mattes, 323 F.3d at 698 n.4; see also Egge v. Healthspan Servs. Co., 115 F. Supp. 2d 1126, 1128 n.1 (D. Minn. 2000) ("It is well settled that

---

[11] Bruns's name is typed as "Burns," but crossed out by hand and replaced with the correct spelling. See Bruns Aff. Ex. B. The Kebassos do not dispute the authenticity of this document.

a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citation omitted).[12]  Therefore, the court considers these documents without converting the motion to a motion for summary judgment. Accordingly, the Kebassos cannot support their claim that Bruns was not an officer or employee of MERS, and this claim fails.[13]

The Kebassos further argue that Bruns had no authority to assign the mortgage in light of <u>Beecroft v. Deutsche Bank Nat'l Trust Co.</u>, 798 N.W.2d 78 (Minn. Ct. App. 2011).[14]  In <u>Beecroft</u>, the plaintiff homeowner appealed the determination of the district court that Deutsche Bank, the assignee of the mortgage, acquired title to the mortgage through a valid assignment. <u>Id.</u> at 82.  The court of appeals remanded for the district court "to explain the basis for its decision" that the assignments were properly executed by parties with the power to assign them.  <u>Id.</u> at 86.  Here, the court has determined that the MERS resolution and other documents

---

[12] The Kebassos do not dispute the authenticity of these documents.

[13] In their brief, the Kebassos argue that they are entitled to discovery on the question of whether the loan was registered to BAC in the MERS system, as required by the Agreement for Signing Authority.  The court disagrees, as this allegation is not pleaded in the complaint and is purely speculative.

[14] This opinion was issued after briefs were submitted in this matter.  The Kebassos submitted a copy of the opinion to the court and to defendants before citing it in oral argument.

necessarily embraced by the pleadings indicate that Bruns was authorized to execute the assignment. It is on this basis that the court dismisses the Kebasso's claim. Therefore, Beecroft is inapposite, and dismissal of this claim is warranted.

**II. Sheriff's Sale**

The Kebassos next argue that even if the assignment from MERS to BAC is valid, the sheriff sale should be set aside. The Kebassos first argue that BAC had no statutory authority to foreclose by advertisement because at the time of the sheriff's sale on July 23, 2010, Arch Bay owned the loan and "BAC no longer had either a legal or equitable interest in the property either as a creditor or a mortgagee." See Compl. ¶ 71. BAC argues that it was the mortgagee at the time of the sheriff sale, that it had a legal interest in the mortgage and that Arch Bay acquired only equitable title when it acquired ownership of the loan.

No pleaded facts support the allegation that BAC was not the mortgagee of record at the date of the sheriff's sale.[15] To the contrary, documents in the public record identify BAC as the mortgagee of record as of March 19, 2010. See Compl. Ex. B. The May 26, 2010, Notice of Foreclosure Sale indicates that the mortgage was assigned to BAC. Id. Ex. D. The June or July 2010 letter from Arch Bay informing the Kebassos that ownership of their

---

[15] In fact, the Kebasso's demonstrative exhibit at oral argument indicates that BAC was the mortgagee at the "start of foreclosure" and at "the sheriff's foreclosure sale."

14

mortgage loan had been transferred from HSBC to Arch Bay does not indicate that Arch Bay acquired legal title or that Arch Bay was the mortgagee of record. See Compl. Ex. F. BAC, as mortgagee of record, may foreclose by advertisement. Therefore, the Kebassos's argument that BAC had no legal title at the time of foreclosure fails.

The Kebassos next argue that the sheriff's sale is void because defendants failed to satisfy the statutory prerequisites of Minnesota Statutes § 580.02 because "the assignment that occurred when ownership of the mortgage loan was transferred to Arch Bay the month before the sheriff's foreclosure sale" was not recorded. Compl. ¶ 72. Defendants argue that this argument is contravened by the Minnesota Supreme Court's holding in Jackson.

In Jackson, the Minnesota Supreme Court addressed the following question:

> Where an entity, such as defendant [Mortgage Electronic Registration Systems, Inc.], serves as mortgagee of record as nominee for a lender and that lender's successors and assigns and there has been no assignment of the mortgage itself, is an assignment of the ownership of the underlying indebtedness for which the mortgage serves as security an assignment that must be recorded prior to the commencement of a mortgage foreclosure by advertisement under Minn. Stat. ch. 580?

770 N.W.2d at 489. The court answered the question in the negative, and held "that transfers of the underlying indebtedness do not have to be recorded to foreclosure [sic] a mortgage by

advertisement." Id. at 489-90. The court held that the term "mortgage" as used in foreclosure-by-advertisement statutes refers only to security interest assignments and, therefore, "promissory note assignments do not have to be recorded under the plain language of the foreclosure by advertisement statutes." Id. at 496. Because a promissory note assignment is an equitable assignment of the security interest that does not affect legal title, only assignment of legal title of the security interest must be recorded to commence foreclosure by advertisement. Id. at 501. Therefore, it is permissible for "the debt to be transferred without an assignment of the security instrument." Id. at 494.

The Kebassos argue that Jackson is limited to circumstances in which MERS is foreclosing as nominee for the owner of the loan. The court disagrees. Jackson addressed the circumstances "[w]here an entity, *such as defendant* [Mortgage Electronic Registration Systems, Inc.], serves as mortgagee of record as nominee for a lender and that lender's successors and assigns." Id. at 489 (emphasis added). Jackson addresses the rights of a mortgagee of record to foreclose by advertisement, and is not limited to foreclosures conducted by MERS. When MERS assigned the mortgage, BAC became the mortgagee of record for the lender and the lender's successors and assigns, and acquired legal title. See Compl. Ex. A, at 3 (granting MERS legal title); id. Ex. B, at 2 (assigning MERS' interest to BAC). In June or July, 2008, Arch Bay acquired

16

ownership of the loan. Compl. ¶ 42. The complaint does not allege, however, that Arch Bay acquired legal title, thereby triggering the requirement that the assignment be recorded. See Jackson, 770 N.W.2d at 501.

The Kebassos further argue that BAC had no authority to foreclose because BAC had no relationship with the owner of the loan. The Kebassos argue that the loan was de-registered from the MERS system when MERS assigned the mortgage to BAC, that BAC was not the mortgagee of record for all subsequent owners, and that the assignment of loans that are no longer in the MERS system and that no longer have MERS as the mortgagee are assignments that must be recorded. The court has already determined, however, that BAC was the assignee of MERS' interest in the mortgage, and therefore was the mortgagee for the lender and lender's successors and assigns. As such, it had the right to foreclose.

The Kebassos next argue that the sheriff's sale violated Minnesota Statutes § 580.04 because the Notice of Foreclosure Sale failed to state or incorrectly stated the name of the mortgagee or assignee of the mortgage. See Compl. ¶ 73. Section 580.04 requires that, in order to foreclose by advertisement, "[e]ach notice shall specify or contain ... the name of the mortgagor, the mortgagee, each assignee of the mortgage, if any, and the original or maximum principal amount secured by the mortgage." Minn. Stat. § 580.04(a)(1). In Jackson, the court held that "the use of the

term mortgage throughout ... [§] 580.04 does not refer to the promissory note but to the security instrument itself." 770 N.W.2d at 496. The Notice of Foreclosure Sale identifies the mortgagee as MERS, indicates that the mortgage was assigned to BAC, and is signed by BAC as "Assignee of Mortgagee." Compl. Ex. D. As addressed above, no pleaded facts indicate that Arch Bay acquired the security instrument itself when it acquired ownership of the loan. Therefore, this claim fails.[16]

### III. Standing

The Kebassos next claim that BAC lacks standing and status as a creditor or mortgagee related to their mortgage loan, and

---

[16] The Kebassos also allege that the sheriff's sale is void pursuant to Minnesota Statutes §§ 582.25(3)(i)-(j) and (11). See Compl. ¶¶ 73-74. These sections provide:

> Every mortgage foreclosure sale by advertisement in this state under power of sale contained in any mortgage duly executed and recorded ... together with the record of such foreclosure sale, is ... hereby legalized and made valid and effective ... as against any or all of the following objections: ... (3) that the notice of sale: (i) failed to state the names of one or more of the assignees of the mortgage and described the subscriber thereof as mortgagee instead of assignee, (j) failed to state or incorrectly stated the name of the mortgagor, the mortgagee, or assignee of mortgagee ... [or] (11) that the date of the mortgage or any assignment thereof ... is omitted or incorrectly or insufficiently stated in the notice of sale or in any of the foreclosure papers, affidavits or instruments.

Minn. Stat. §§ 582.25(3)(i)-(j), (11). The Kebassos provide no argument to support this claim in their memorandum in opposition to the instant motion. Moreover, the pleaded facts fail to state a claim for relief under this statute. Therefore, this claim fails.

18

therefore seek declaratory and injunctive relief pursuant to Minnesota Statute §§ 555.01-.03. See Compl. ¶¶ 76-77. The Kebassos assert no actionable grounds for this relief apart from the grounds asserted in counts I and II.[17] Because the court has already determined that those claims fail, count III also warrants dismissal.

Moreover, defendants argue that the Kebassos, as mortgagors, lack standing to challenge defendants's authority to foreclose. In Jackson, the Minnesota Supreme Court held that "any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement." 770 N.W.2d at 500. The court reaffirmed the principle that "legal and equitable title can be separated" and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, "[i]t is a matter between them alone, and does not concern the mortgagor," and such a transaction does "not affect the interests of the mortgagor, and he could not object." Id. (citing Carpenter v. Artisans' Sav. Bank, 47 N.W. 150, 150 (Minn. 1980)); see also Deutsche Bank Trust Co. Ams. v. Souza, No. A10-190, 2010 WL 3958671, at *3 n.2 (Minn. Ct. App. Oct. 12, 2010) (any dispute between owners of legal and equitable

---

[17] The Kebassos present no argument in support of count III in their memorandum in opposition to the instant motion.

19

mortgagee's rights involves holders of those mortgagee's rights, not the mortgagor). Here, Arch Bay, the undisputed owner of equitable title, does not challenge BAC's right to foreclose. Therefore, for this additional reason, the Kebassos's claims fail.[18]

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motions to dismiss by defendants Arch Bay [ECF No. 6] and BAC [ECF No. 9] are granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 20, 2011

                                           s/David S. Doty
                                           David S. Doty, Judge
                                           United States District Court

---

[18] The Kebassos argue that these cases are inapposite because BAC has no legal relationship with the owner of the subject loan. The court, however, has already rejected this argument and determined that BAC was the mortgagee of record with legal title to the mortgage.